**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Darrell James Hill, | No. 09-cv-1958-PHX-JAT |
| Plaintiff, | **ORDER** |
| vs. | |
| Promise Hospital of Phoenix, Inc., Jane Doe 1-3; Secretary et al of the Treasury for the Internal Revenue Service; Commissioner et al for the Social Security Administration, | |
| Defendant. | |

The Secretary of the Treasury for the Internal Revenue Service and the Commissioner of the Social Security Administration ("Federal Defendants") submitted a Motion to Dismiss for the Court's disposition pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6). (Doc. #19). For the reasons enumerated below, the Court grants Federal Defendants' Motion to Dismiss.

**I.      Background**

Plaintiff amended his complaint as a matter of right ("Amended Complaint") on February 8, 2010. (Doc. #7). In his Amended Complaint, Plaintiff argues that Defendant Promise Hospital of Phoenix, Inc.[1] wrongfully failed to hire him because of Plaintiff's refusal

---

[1] On March 1, 2010 the Court *sua sponte* dismissed Promise Hospital for failure to timely serve. (Doc. # 13). The Court denied Plaintiff's Motion to Reconsider that dismissal on June 28, 2010. (Doc. #25).

1  to provide a social security number for employment purposes. (*Id.*). Plaintiff further asserts that a social security number is a "mark of the beast" and any forced use of a social security number is a violation of his constitutional rights and right to privacy. (*Id.*).

Plaintiff maintains that a social security number is an asset of a state sponsored religion, which is prohibited by the Constitution. (*Id.*). Plaintiff requests that the Court issue an injunction and mandamus preventing Federal Defendants from enforcing the federal laws that require Plaintiff to obtain and use a social security number for employment. (*Id.*). Plaintiff also requests the Court to order each of the Federal Defendants to pay damages to the Plaintiff in the amount of $500,000.00. (*Id.* at. 65-68).

Under federal law, employers are required to withhold certain income taxes and social security taxes and make a report as to each individual employee to the Internal Revenue Service ("IRS"). These reports require identification of the employee by the employee's social security number. *See* 26 U.S.C. § 6109, 26 C.F.R. § 301.6011(b)-2, 301.6109-1; *see also Weber v. Leaseway Dedicated Logistics, Inc.*, 5 F. Supp. 2d 1219, 1222 (D. Kan. 1998), *aff'd by* 166 F.3d 1223 (10th Cir. 1999) (quoting "the IRS requires every employee to have a social security number"). Both employees and employers are subject to potential penalties from the IRS for not reporting employees' social security numbers. *See* 26 U.S.C. §§ 6721, 6722, and 6723.

## II. Discussion

In support of their Motion to Dismiss, Federal Defendants make the following arguments: Plaintiff's suit is against the United States; Plaintiff's action is barred by the doctrine of sovereign immunity; Plaintiff's action is expressly barred by the Anti-Injunction Act and the Declaratory Judgment Act; the Court does not have jurisdiction under the Mandamus Act; Plaintiff failed to state a claim under Rule 8; and granting Plaintiff relief would require the employer to violate federal or state laws, which constitutes an "undue hardship." (Doc. #20). For reasons cited herein, the Court grants Federal Defendants' Motion to Dismiss.

### A. Agents and Officers of the United States

Plaintiff names the "Secretary of the Treasury for the Internal Revenue Service" and the "Commissioner of the Social Security Administration" as Defendants in his Amended Complaint. (Doc. #7). Federal Defendants argue that because Plaintiff's claim is against the individuals in their official capacities, Plaintiff's claim is against the United States. (Doc. #20 at 4-5). The Court agrees.

When a suit is against an agent or officer of the United States in her official capacity, the suit is effectively against the United States. *Hutchinson v. U.S.*, 677 F.2d 1322, 1327 (9th Cir. 1982). For example, the court in *Hutchinson* found that a suit against IRS employees in their official capacities is essentially a suit against the United States. *Id.* If the rule were otherwise, the administration of public affairs entrusted to the executive branch would be seriously crippled due to potential lawsuits. *Spalding v. Vilas*, 161 U.S. 483, 498-99 (1896); *see also Atkinson v. O'Neill*, 867 F.2d 589, 590 (10th Cir. 1989) (holding that when an action is one against named individual defendants, but the acts complained of consist of actions taken by defendants in their official capacity as agents of the United States, the action is in fact one against the United States).

Because Plaintiff named Federal Defendants in their official capacities, Plaintiff's action is against the United States. In addition, any judgment would come out of public funds, so Plaintiff's suit must be considered against the United States.

### B. Sovereign Immunity

In support of their Rule 12(b)(1) Motion to Dismiss for lack of subject matter jurisdiction, Federal Defendants argue that sovereign immunity justifies dismissal. Federal Defendants argue that there has not been a waiver of sovereign immunity.

However, Plaintiff seeks relief under Title VII and sovereign immunity has been abrogated for purposes of Title VII actions against federal government employers**.** Nevertheless, the Court finds that there is not a sufficient nexus between Federal Defendants and Plaintiff's employment opportunities to warrant subjecting the Federal Defendants to

Title VII.

It is well settled that the United States, as a sovereign, may not be sued without its consent, and that the terms of its consent define the court's jurisdiction. *U.S. v. Dalm*, 494 U.S. 596, 608 (1990); *U.S. v. Sherwood*, 312 U.S. 584, 586-87 (1941) (holding that the United States, as sovereign, is immune from suit except when the United States consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain suit); *Gilbert v. DaGrossa*, 756 F.2d 1455, 1458 (9th Cir. 1985). Where the United States has not consented to suit, the court lacks jurisdiction over the subject matter of the action and dismissal is required. *E.g., Hutchinson v. U.S.*, 677 F.2d 1322, 1327 (9th Cir. 1982).

However, when Congress does waive the sovereign immunity of certain federal entities through legislation that allows the federal entity to sue and be sued, these waivers are to be construed liberally. *Loeffler v. Frank*, 486 U.S. 549, 555 (1988). When Congress establishes an agency, authorizes it to engage in commercial and business transactions with the public, and permits it to "sue and be sued," it cannot be assumed that restrictions on that authority are to be implied. *FHA v. Burr*, 309 U.S. 242, 245 (1940).

With regard to Title VII, Congress has abrogated sovereign immunity by allowing suit to be brought against both private employers and federal employers. 42 U.S.C. § 2000e-16 (permitting suit against "all personnel actions affecting employees or applicants for employment . . . in executive agencies as defined in section 105 of Title 5 . . . "). See also 5 U.S.C.A. § 105 ("For the purpose of this title, 'Executive agency' means an Executive department . . . "); *Dothard v. Rawlinson*, 433 U.S. 321, 322 n. 14 (Title VII applies "to governmental and private employers alike.").

In *Loeffler v. Frank*, the Supreme Court held that prejudgment interest may be awarded in a suit against the United States Postal Service brought under Title VII of the Civil Rights Act of 1964. 486 U.S. 549. Plaintiff Loeffler claimed his discharge as a rural letter carrier was based on sex discrimination. *Id.* at 551. The Court reasoned that by launching

a federal entity such as the Postal Service into the commercial world as an employer, Congress "cast off the Service's cloak of sovereignty." *Id.* at 556. To hold otherwise would contravene the purpose of Title VII since, "section 717 of the Civil Rights Act of 1964, as amended, provides the exclusive judicial remedy for claims of discrimination in federal employment" *E.g. Brown v. Gen. Serv. Admin.*, 425 U.S. 820, 835 (1976).

Title VII does not apply only to plaintiffs engaging in "direct employment relationships" with governmental employers. *Assoc. of Mexican-Am. Educators ("AMAE") v. Cal.*, 231 F.3d 572 (9th Cir. 2000). In *AMAE*, the Ninth Circuit held that a direct employment relationship is not a prerequisite to Title VII liability. *Id.* at 580. The court went on to assert that "[a]lthough 'there must be some connection with an employment relationship for Title VII protections to apply,' that 'connection with employment need not necessarily be direct.'" *Id.* (citing *Lutcher v. Musicians Union Loc. 47*, 633 F.2d 880, 883 (9th Cir. 1980)).

An entity may be indirectly liable under Title VII if it *interferes* with an individual's employment opportunities with another employer. *Id.* (emphasis added) (citing *Lutcher*, 633 F.2d at 883 n. 3). The Ninth Circuit has adopted the District of Columbia Circuit's opinion in *Sibley Mem. Hosp. v. Wilson. Id.* (citing *Sibley Mem. Hosp. v. Wilson.*, 488 F.2d 1338, 1340-41 (D.C. Cir. 1973)).[2] In *Sibley*, the plaintiff was a male private-duty nurse who received his income from individual patients. 488 F.2d at 1339-40. When a patient in defendant hospital requested a private nurse, the hospital arranged for a private nurse through a registry service. *Id.* Plaintiff claimed that defendant hospital only allowed male nurses like him to attend male patients, but allowed female nurses to attend both male and female patients. *Id.* The *Sibley* court found that although the defendant did not employ the plaintiff,

---

[2] Other cases following the "interference" model from *Sibley* include: *Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194, 202 (3d Cir. 1994); *Christopher v. Stouder Mem'l Hosp.*, 936 F.2d 870, 876-77 (6th Cir. 1991); *Pardazi v. Cullman Med. Ctr.*, 838 F.2d 1155, 1156 (11th Cir. 1988); and *Shehadeh v. Chesapeak & Potomac Tel. Co.*, 595 F.2d 711, 722 (D.C. Cir. 1978).

it exercised considerable power over his ability to form employment relationships with third parties, thereby "interfering" with his employment opportunities. Therefore, the court found defendant liable under Title VII. *Id.* at 1341.

What constitutes "interference" depends on the facts of the case. In finding there was "interference," the *Sibley* court reasoned that the defendant's control over the premises on which the plaintiff provided his services, as well as its control over the plaintiff's access to patients, created a "highly visible nexus with the creation and continuance of direct employment relationships between third parties." *Id.* at 1342. This "highly visible nexus" constituted interference that brought the defendant's actions within the scope of Title VII.[3] *Id.* By adopting the *Sibley* court's reasoning, the *AMAE* court held that interference did exist because defendants required, implemented, and administered the California Basic Education Skills Test ("CBEST"), which effectively "interfered" with plaintiff's employment opportunities with local school districts in California. 231 F.3d at 581.

However, "interference" does not exist when there is not a highly visible nexus with the creation and continuance of direct employment relationships between third parties. *Sibley*, 488 F.2d at 1342. "Interference" also does not exist when the only connection among a licensing agency, the plaintiff, and the universe of prospective employers is the agency's implementation of a general licensing examination. *AMAE,* 231 F.3d at 572 (citing *George v. N.J. Bd. of Veterinary Med. Exam'rs*, 794 F.2d 113 (3d Cir. 1986)). If the third party is not attempting to control the hiring practice of, or the performance of work for any specific employer, the third party is not "interfering" with employment for the purposes of Title VII.

---

[3] The D.C. Circuit's holding in *Sibley* was rooted in the text of Title VII. *AMAE*, 231 F.3d at 580. The Court reasoned that, although Title VII applies to "employees," Congress extended the protections of the statute to "any individual" who suffers discrimination: "nowhere are there words of limitation that restrict references in the Act to 'any individual' as comprehending only an employee of an employer." *Id.* at 580-81 (citing *Sibley*, 488 F.2d at 1342.). This interpretation is the proper one in view of "Congress' directive to read Title VII broadly so as to best effectuate its remedial purposes." *Id.* (citing *Duffield v. Robertson Stephens & Co.*, 144 F.3d 1182, 1192 (9th Cir. 1998)).

*Id.* at 584 (explaining that because the CBEST does not apply across-the-board to all who wish to teach in California, unlike a state-wide veterinary licensing examination, the CBEST is an exercise of proprietary power that subjects the state to the coverage of Title VII).

Title VII has subjected the federal government to suit by waiving sovereign immunity when the federal government is an employer, prospective employer, or "interferes" with employment. *See AMAE*, 231 F.3d 572. Plaintiff did not apply for a job with the federal government, so Federal Defendants would be subject to suit only if they interfered with his employment. The Court holds that Federal Defendants' actions did not constitute "interference" with Plaintiff's employment opportunities.

The present facts are distinguishable from *Sibley*. For example, Federal Defendants do not exert control over the premises on which Plaintiff sought employment, nor do Federal Defendants exert control over Plaintiff's access to employment. The present facts are also distinguishable from *AMAE*. Federal Defendants do not control one particular type of employment. As such, Federal Defendants do not have the "highly visible nexus" with the Plaintiff's employment opportunities necessary to subject them to Title VII liability.

Federal Defendants were not attempting to control the hiring practices of, or the performance of work for, any specific employer. Federal Defendants' main initiative was to institute an income tax structure based upon social security numbers as a means for identifying individuals. Federal Defendants were not attempting to exert a proprietary power over Plaintiff's employment opportunities. Without the requisite "highly visible nexus," Federal Defendants have not "interfered" with Plaintiff's employment for the purposes of Title VII. Since the Federal Defendants are not subject to Title VII liability and Plaintiff has not stated another basis for relief,[4] Federal Defendants have immunity and the Court does not

---

[4] Plaintiff does not allege any statute that specifically provides for suits against the United States. Plaintiff maintains that the Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 1361 and 42 U.S.C. §§ 1981a, 1983, 1985, 1986, 2000bb *et seq.* and 2000e *et seq.* (Doc. #7 at 6-9). However, none of the other statutes cited by Plaintiff contains a waiver of sovereign immunity.

have subject matter jurisdiction over Plaintiff's claim against Federal Defendants.

### C. Equitable Tolling

Even if the Court had subject matter jurisdiction, the Court notes that Plaintiff did not file his complaint within the time frame allotted by the Equal Employment Opportunity Commission ("EEOC"). Plaintiff filed an employment discrimination complaint with the EEOC and was provided a right to sue letter on June 19, 2009, which included a caveat that a lawsuit must be filed within 90 days. (Doc. #7, p. 49-51). Plaintiff filed his complaint on September 18, 2009, missing the deadline by one day.[5] (Doc. #1). Plaintiff has not provided the Court with an explanation for his untimely filing.

In order to make a Title VII administrative claim, certain presentment requirements must be met. 42 U.S.C. § 2000e-16(c); *Sommatino v. U.S.*, 255 F.3d 704 (9th Cir. 2001). Chief among these is notifying the EEOC of your employment discrimination claim within 45 days of the alleged conduct. *Id. See* 29 C.F.R. § 1614.105 (pre-complaint processing); 29 C.F.R. § 1614.106 (individual complaints). Within ninety days of receipt of notice of final action taken by the EEOC, an employee or applicant for employment may file a civil action. 42 U.S.C. § 2000e-16(c). If a plaintiff does not substantially comply with the presentment requirements, a district court does not have subject matter jurisdiction to consider the Title VII claim. *Id.* at 706-09. *See Blank v. Donovan*, 780 F.2d 808, 809 (9th Cir. 1986); *Scott v. Perry*, 569 F.2d 1064, 1065-66 (9th Cir. 1978). However, since compliance only need be substantial, presentment requirements are subject to equitable tolling. *See Irwin v. Dept. of Vet. Affairs*, 498 U.S. 89, 95 (1990). "Once Congress made a waiver [of sovereign immunity], . . . the rule of equitable tolling became applicable to suits against the Government." *See id.*

Equitable tolling has been allowed in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or

---

[5]Ninety days from June 19, 2009 is September 17, 2009.

- 8 -

where the complaint has been induced or tricked by the adversary's misconduct. *Id.* at 96. However, courts are less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights. *Id.* (citing *Baldwin Co. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984)). Although Congress did not expressly provide for equitable tolling, limitation periods for suits against the Government are presumptively subject to equitable tolling. *Id.* (J. White, concurring).

Plaintiff has not cited any reason for the delay in his moving papers. As a result, the Court does not have an adequate basis for allowing equitable tolling of the 90-day deadline. Although this factor is not determinative, it is another compelling reason justifying dismissal.

### D.     Anti-Injunction Act and the Declaratory Judgment Act

Plaintiff asks the Court to issue an injunction and mandamus preventing Federal Defendants from enforcing the federal laws that require Plaintiff to obtain and use a social security number for employment. (*Id.*). Plaintiff also requests the Court to order each of the Federal Defendants to pay damages to the Plaintiff in the amount of $500,000.00. (*Id.* at. 65-68).

First, Federal Defendants argue that the Anti-Injunction Act prohibits the Court from issuing an injunction or a mandamus that prevents Federal Defendants from enforcing the federal taxation laws. Second, Federal Defendants argue that the Declaratory Judgment Act expressly precludes the Court from granting declaratory judgments with respect to federal taxes.

The Anti-Injunction Act states:

> Except as provided in [Internal Revenue Code] sections 6015(e), 6212(a) and (c), 6213(a), 6625(b), 6246(b), 6330(e)(1), 6331(I), 6672(c), 7426(a) and (b)(1), 7429(b) and 7436, no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.[6]

---

[6]Section 6015(e) of the Internal Revenue Code (26 U.S.C.) provides for the filing of a petition for review in the United States Tax Court. Sections 6212 and 6213(a) relate to

- 9 -

26 U.S.C. § 7421(a). The purpose of the Anti-Injunction Act is to protect the "Government's need to assess and collect taxes as expeditiously as possible with a minimum of pre-enforcement judicial interference." *Bob Jones U. v. Simon*, 416 U.S. 725, 736-37 (1974); *see also S.C. v. Regan*, 465 U.S. 367, 374-75 (1984). The goal of the Anti-Injunction Act is to prevent unauthorized interference with the collection of taxes. *Enoch v. Williams Packing & Nav. Co.*, 370 U.S. 1, 8 (1962). Effectuating this goal generally prohibits injunctions against all acts necessary or incidental to the assessment or collection of taxes. *See, e.g. Elias v. Connect*, 908 F.2d 521, 523 (9th Cir. 1990); *Wyo. Trucking Ass'n v. Bentsen*, 82 F.3d 930 (10th Cir. 1996).

Granting any injunctive relief in Plaintiff's case would require interfering with the collection of taxes, which clearly contravenes the letter and spirit of the Anti-Injunction Act. As such, even if the Court had jurisdiction, the Court would not grant injunctive relief to Plaintiff.

Similarly, the Declaratory Judgment Act specifically excludes the authority to render declaratory relief "with respect to Federal taxes" (subject to exceptions not relevant here). *See Powelson v. U.S.*, 979 F.2d 141, 145 (9th Cir. 1992); *Hughes v. U.S.*, 953 F.2d 531, 536-37 (9th Cir. 1992). Because the Declaratory Judgment Act does not allow relief here, the Declaratory Judgment Act would bar Plaintiff's claims even if the Court had jurisdiction. *See*

---

assessments entered in violation of the deficiency procedures of the Code. Section 6225(a) provides restrictions on assessment and collection attributable to a partnership. Section 6246(b) provides for an injunction against premature action with respect to a partnership adjustment. Section 6330(e)(1) pertains to suspension of specified actions during the pendency of a hearing before levy pursuant to Section 6330(a). Section 6330(i) provides for an injunction notwithstanding Section 7421(a) for any unpaid divisible tax. Sections 6672(b) and 6694(c) allow taxpayers to obtain stays of certain penalty collection proceedings if certain requisites are met. Section 7426 permits the district courts to entertain civil actions by persons other than the taxpayer under certain circumstances. Section 7429(b) relates to district court review of jeopardy assessments. Section 7436 pertains to proceedings for determination of employment status. None of these provisions are relevant here.

*id.*

### E. Mandamus Act

Even if Plaintiff's Amended Complaint is construed as a request for mandamus pursuant to the Mandamus Act, 28 U.S.C. § 1361, Plaintiff cannot avail himself of relief because the Court does not have subject matter jurisdiction.

The Mandamus Act confers jurisdiction on district courts to order an agent of the United States to perform a duty owed to complainant. *Id.* The duty, however, must be ministerial and mandated by law, not a discretionary agency function. *Pittston Coal Group v. Sebben*, 488 U.S. 105, 121 (1988).

The Plaintiff has failed to set forth any clear, nondiscretionary duties owed to him by any Federal Defendants that would warrant relief pursuant to the Mandamus Act. Absent a "clear, nondiscretionary duty" owed to the plaintiff, the [c]ourt has no authority to issue a writ of mandamus. *Heckler v. Ringer*, 466 U.S. 602, 616 (1984). As such, the Mandamus Act does not confer subject matter jurisdiction on this Court.

### F. Failure to State a Claim Upon Which Relief Can Be Granted

Federal Defendants maintain that even if the Court did have subject matter jurisdiction, Plaintiff has failed to state a claim due to several pleading deficiencies. A motion to dismiss for failure to state a claim should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Green v. Maraio*, 722 F.2d 1013, 1015-16 (2d Cir. 1983) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). In the present action, Plaintiff cites statutes that are not applicable. Moreover, Plaintiff's claim for damages in the amount of $500,000.00 is not supported in law or by sufficient factual matter. More importantly, Plaintiff failed to allege how he was damaged, what statute entitles him to damages, and the basis for the amount of damages claimed. As a result, Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted. The Court finds that this provides an alternative reason for

dismissal.

### G. Undue Hardship

Last, Federal Defendants maintain that mandating employers to usurp state and federal social security and tax guidelines because of an employee's religious affiliations constitutes an "undue hardship." *See Sutton v. Providence St. Joseph Med. Hosp. Ctr.*, 192 F.3d 826 (9th Cir. 1999).

Federal courts have seen a number of challenges to the mandatory provision of social security numbers by individuals who believe that social security numbers are the "mark of the beast." *E.g. Sutton*, 192 F.3d at 826; *Miller v. Reed*, 176 F.3d 1202 (9th Cir. 1999). These individuals claim that employers or government agencies who require them to provide a social security number infringe their rights to freely exercise their sincere religious beliefs protected by the First Amendment Free Exercise Clause and by the Religious Freedom Restoration Act of 1993, 42 U.S.C. §§ 2000bb through 2000bb-4 ("RFRA"). *Id.* None of these challenges has been successful.

In *Sutton*, a prospective employee sued the hospital, after the hospital asked him to provide his social security number during the hiring process, because he believed that a social security number is the "mark of the beast" as prophesied in the Book of Revelations, Chapters 13 and 14. *Sutton*, 193 F.3d at 830-31. The plaintiff sued the hospital claiming violations of Title VII of the 1964 Civil Rights Act, as amended, 42 U.S.C. § 2000e *et seq.*, the RFRA and the free speech guarantee of the First Amendment. *Id.* at 830. The Ninth Circuit denied his claim reiterating that under federal law, all employers are required to withhold certain income taxes and social security taxes and submit a report to the Internal Revenue Service as to each individual employee. *Id.* Such reports require identification of the employee by social security number. *Id.* at 831. The court held that an employer is not liable under Title VII when accommodating an employee's religious beliefs would require the employer to violate federal or state laws. *Id.*

As in *Sutton*, Plaintiff claims that a social security number is a "mark of the beast" and forcing him to use it would violate his rights under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, the RFRA, and the First Amendment. Here, Plaintiff requests the Court to issue an injunction and mandamus preventing Federal Defendants from enforcing the federal laws requiring Plaintiff to obtain and use a social security number for employment. By requiring the hospital to accommodate the employee by waiving the mandatory provision of the social security number, the hospital would violate federal and state laws. *See Sutton* at 830-31. As such, it would cause "undue hardship" as a matter of law.

### III. Conclusion

The Court grants Federal Defendants' Motion to Dismiss for lack of subject matter jurisdiction. Alternatively, the Court grants Federal Defendants' Motion to Dismiss for failure to state a claim.

Accordingly,

**IT IS ORDERED** Granting Federal Defendants' Motion to Dismiss (Doc. #19).

**IT IS FURTHER ORDERED** dismissing this case in its entirety because the Court previously dismissed the only other Defendant, Promise Hospital. (Doc. #13). The Clerk therefore should enter judgment for Defendants and against Plaintiff.

DATED this 7th day of July, 2010.

James A. Teilborg
United States District Judge